**[Cite as *Cincinnati v. State*, 2024-Ohio-2425.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NO. C-230492 |
| | | TRIAL NO. A-2300389 |
| AFTAB PUREVAL, MAYOR OF CINCINNATI, | : | |
| | : | *O P I N I O N.* |
| and | : | |
| JAN-MICHELE KEARNEY, VICE-MAYOR OF CINCINNATI, | : | |
| | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| STATE OF OHIO, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 26, 2024

*Emily Smart Woerner*, City Solicitor, *Shuva J. Paul* and *Scott M. Heenan*, Assistant City Solicitors, for Plaintiffs-Appellees,

*Dave Yost,* Ohio Attorney General, *T. Elliott Gaiser*, Solicitor General, and *Elizabeth H. Smith*, *James P. Reising*, and *Stephen P. Tabatowski*, Assistant Attorneys General, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   The city of Cincinnati, hoping to combat gun violence and to provide for a safer community, wants to find creative ways to address gun violence at the local level.  The state of Ohio, however, objects, essentially telling the city that it has no ability to regulate firearms because the General Assembly passed a statute largely stripping municipalities of the right to protect their citizens in this manner.  This appeal accordingly pits the constitutional Home Rule Amendment against the statewide firearm uniformity law, R.C. 9.68, as recently amended ("Amended R.C. 9.68").  Although this forces us to consider various legal tests that do not always present a portrait of clarity, we ultimately conclude that the Supreme Court of Ohio ties the city's hands—its precedent requires us to recognize the constitutionality of Amended R.C. 9.68, regardless of the ill effects that creates for municipalities across the state.  For the reasons detailed below, we ultimately conclude that the trial court erred by enjoining the 2018 and 2022 amendments to R.C. 9.68.  We accordingly reverse its preliminary injunction of that law and remand this cause for further proceedings.

{¶2}   After reviewing the factual and procedural background of this appeal in Part I, we determine that the trial court's order constitutes a final appealable order over which this court has jurisdiction in Part II.  Turning to the merits of the trial court's preliminary injunction order in Part III, we assess the city's likelihood of success (the first factor for determining whether to grant the injunction) on its three arguments under the Ohio Constitution: the Home Rule Amendment (III.A. and III.B.), free speech (III.C.i.), and separation of powers (III.C.ii.).  Finally, we address

the three remaining preliminary injunction factors in Part IV and determine that, on balance, the trial court erred in enjoining Amended R.C. 9.68.

I.

**{¶3}** R.C. 9.68 gives "persons in Ohio the right to carry a handgun unless federal or state law prohibits them from doing so" and prohibits municipal ordinances from infringing on that right. *Ohioans for Concealed Carry, Inc. v. City of Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 20. As originally enacted in 2007, R.C. 9.68 ("Original R.C. 9.68") provided that:

(A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

(B) In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section.

3

**{¶4}** This original version of the statewide firearms uniformity law existed in tension with the Home Rule Amendment to the Ohio Constitution, which affords municipalities the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Constitution, Article XVIII, Section 3. Nonetheless, the law survived a Home Rule Amendment challenge in a case in which the Supreme Court held "that R.C 9.68 is a general law that displaces municipal firearm ordinances and does not unconstitutionally infringe on municipal home rule authority." *City of Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 35 ("*City of Cleveland* (2010)"). More about that case later.

**{¶5}** Since then, the General Assembly has twice amended R.C. 9.68, augmenting how the law preempts and nullifies local regulations relating to firearms and knives, prompting fresh Home Rule Amendment challenges to it. First, through 2017 Am.Sub.H.B. No. 228 ("H.B. 228"), enacted in 2018 and effective as of December 2019, the legislature expanded the list of firearm regulations for which R.C. 9.68 demanded statewide uniformity, added language about the importance of self-protection, specified the types of local regulations subject to preemption (including "any ordinance, rule, regulation," etc. not provided by state or federal law), and explicitly declared such local regulations "null and void." Amended R.C. 9.68(A). Further, H.B. 228 expanded (at least in terms of word count) R.C. 9.68(B), making explicit a private right of action to challenge local regulations conflicting with R.C. 9.68(A), allowing for damages, injunctive relief, and declaratory relief, and affording successful challengers reasonable expenses to be paid by the losing political subdivision. Amended R.C. 9.68(B). Second, through 2021 Am.Sub.S.B. No. 156

("S.B. 156"), enacted in 2022 and effective as of September 2022, the legislature for some reason added knives to this firearms uniformity scheme.

{¶6} As a result, in its current, amended form, R.C. 9.68(A) and (B) read:

(A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, other transfer, manufacture, taxation, keeping, and reporting of loss or theft of firearms, their components, and their ammunition, and knives. The general assembly also finds and declares that it is proper for law-abiding people to protect themselves, their families, and others from intruders and attackers without fear of prosecution or civil action for acting in defense of themselves or others. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, including by any ordinance, rule, regulation, resolution, practice, or other action or any threat of citation, prosecution, or other legal process, may own, possess, purchase, acquire, transport, store, carry, sell, transfer, manufacture, or keep any firearm, part of a firearm, its components, and its ammunition, and any knife. Any such further license, permission, restriction, delay, or process interferes with the fundamental individual right described in this division and unduly

5

inhibits law-abiding people from protecting themselves, their families, and others from intruders and attackers and from other legitimate uses of constitutionally protected arms, including hunting and sporting activities, and the state by this section preempts, supersedes, and declares null and void any such further license, permission, restriction, delay, or process.

(B) A person, group, or entity adversely affected by any manner of ordinance, rule, regulation, resolution, practice, or other action enacted or enforced by a political subdivision in conflict with division (A) of this section may bring a civil action against the political subdivision seeking damages from the political subdivision, declaratory relief, injunctive relief, or a combination of those remedies. Any damages awarded shall be awarded against, and paid by, the political subdivision. In addition to any actual damages awarded against the political subdivision and other relief provided with respect to such an action, the court shall award reasonable expenses to any person, group, or entity that brings the action, to be paid by the political subdivision, if either of the following applies:

> (1) The person, group, or entity prevails in a challenge to the ordinance, rule, regulation, resolution, practice, or action as being in conflict with division (A) of this section.

> (2) The ordinance, rule, regulation, resolution, practice, or action or the manner of its enforcement is repealed or rescinded

after the civil action was filed but prior to a final court determination of the action.

{¶7} In the view of plaintiffs-appellees city of Cincinnati, Mayor Aftab Pureval, and Vice-Mayor Jan-Michele Kearney (collectively, "the City"), these changes "fundamentally alter[ed] the operation of the statute," while from the defendant-appellant state of Ohio's perspective, the amendments merely "reiterate[d] the General Assembly's view of the importance of the right to bear arms[,] * * * clarifie[d] that local ordinances restricting that right are 'null and void,' " and "strengthen[ed]" the private right of action set forth in R.C. 9.68(B). The state insists that the amendments "expand[ed] the types of firearms regulations with which local ordinances may not conflict," but it contends that these substantive changes do not alter the Supreme Court of Ohio's 2010 conclusion that Original R.C. 9.68 is a general law that preempts local firearm ordinances without running afoul of the Home Rule Amendment. *See City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 35.

{¶8} The City developed a factual record before the trial court chronicling how Amended R.C. 9.68 directly and indirectly blocks it from acting on gun violence concerns that dominate local politics and policing. Mayor Pureval, Chief of Police Teresa Theetge, and Assistant City Manager Virginia Tallent each testified about prolific gun violence issues faced by the city and its residents. To back that up, the City introduced evidence documenting an increased rate of firearm-related crimes and provided affidavits explaining the need for help in neighborhoods especially fraught with gun violence. Mayor Pureval and Chief Theetge identified gun violence as their top priority and described how Amended R.C. 9.68 hamstrings their ability to respond

to the spread of guns and the manufacture and use of Glock switch devices. The witnesses each expressed concerns that the City's Good Neighbor Agreements, through which businesses commit to the City that they will prohibit the possession of firearms on their premises, might open the City to liability under Amended R.C. 9.68. They were unsure whether Cincinnati's new "safe storage" law would be preempted by Amended R.C. 9.68, and Mayor Pureval described how the state law stopped him from proposing a stricter version of that ordinance. He also shared his reluctance to propose an ordinance that would allow for preemptive removal of firearms from those experiencing mental health crises.

{¶9} Backed by this evidentiary record, the City argued that Amended R.C. 9.68 ties its hands on the most pressing public safety concerns facing citizens and the city's leaders. It focused on the amended statute's broad proscription of "any * * * resolution, practice, or other action or any threat of citation, prosecution, or other legal process." Amended R.C. 9.68(A). In its view, given a lack of affirmative police regulations relating to firearms in the statute and across state law, this expanded language "leaves municipal officials guessing about their authority to act even in regulatory areas—like firearm storage and manufacturing—left wholly untouched by the General Assembly." The state largely declined to engage with the factual record built by the City, maintaining that the issues before the trial court concerned purely legal questions and that "Home Rule authority does not make an exception for the gravity of an issue."

{¶10} Against this evidentiary backdrop, the trial court rejected the state's legal arguments and preliminarily enjoined both the 2018 and the 2022 amendments while leaving in effect Original R.C. 9.68 as upheld in *City of Cleveland* (2010).

Parsing the statute sentence-by-sentence, it determined that, under the four-part test established in *City of Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, Amended R.C. 9.68 no longer qualified as a "general law" under the Home Rule Amendment, meaning that it effectively violated the Ohio Constitution's reservation of municipal authority under that amendment. The court based its decision on prongs three and four of the *City of Canton* test, which relate to whether the state law merely limits municipalities' legislative power (rather than setting forth its own regulations that serve a statewide interest) and whether the law prescribes a rule of conduct on citizens generally or instead acts only on political subdivisions. *See id.* at ¶ 21. Because Amended R.C. 9.68, in the court's view, did not set forth a general law, it enjoined the state from enforcing the amended portions of the law, though it did not undertake a separate analysis of the two amendments. Separately, the court rejected additional constitutional claims marshalled by the City, premised on free speech and separation of powers doctrines.

{¶11} The state now appeals, presenting a single assignment of error challenging the issuance of the preliminary injunction.

II.

{¶12} Before delving into the merits of the trial court's preliminary injunction order, we must first decide whether we can reach them under Ohio's regime of limited appellate review for provisional orders. The Ohio Constitution and state law limit this court's jurisdiction to final and appealable orders, which can include certain "provisional remed[ies]," including preliminary injunctions like the one below. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2505.03 and 2505.02(A)(3); *see Preterm-Cleveland v. Yost*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, ¶ 9-

9

10. For the grant or denial of a provisional remedy to constitute a final appealable order, it must satisfy both prongs of the two-part test set forth in R.C. 2505.02(B)(4), which the parties agree controls the question of our appellate jurisdiction here:

    (a)    The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

    (b)    The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶13} After initially moving to dismiss this appeal for lack of a final appealable order, which a motions panel of this court denied, the City resurrects that argument in its appellate brief, insisting that the state would not be denied a meaningful and effective remedy by waiting until after the court's final judgment to appeal the injunction (assuming it persists). *See* R.C. 2505.02(B)(4)(b). The parties agree that the first part of the test, R.C. 2505.02(B)(4)(a), is satisfied.

{¶14} The second prong's "meaningful or effective remedy" requirement "exists in recognition that, 'in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment.' " *Preterm-Cleveland* at ¶ 15, quoting *State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001). Thus, "[i]n some instances, 'the proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." *Muncie* at 451, quoting *Gibson-Myers & Assocs. v. Pearce*, 9th Dist. Summit No. 19358, 1999 Ohio App. LEXIS 5010, 7-8 (Oct. 27, 1999).

{¶15} But discerning whether a party can achieve a "meaningful or effective remedy" through a belated appeal after final judgment is a hopelessly imprecise task. *See* Painter and Pollis, *Ohio Appellate Practice,* Section 2:21 (2018) ("As one might expect, whether a subsequent appeal is a meaningful or effective remedy is often a close question, and inconsistent results are perhaps inevitable."). Unsurprisingly, then, judges will reach different conclusions on this question, as evidenced by the dissent that follows.[1] Ultimately, though, on the unique facts of this case, we determine that we have appellate jurisdiction to consider an immediate appeal of the trial court's preliminary injunction order.

{¶16} Our court has endeavored to provide guidance in this area, as we recently did in *Preterm-Cleveland,* 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540. That case involved the finality of an order preliminarily enjoining the enforcement of a state law, Senate Bill 23 ("S.B. 23"), generally proscribing abortions after detection of a fetal heartbeat. As we explained in that case, Ohio courts generally interpret the "meaningful or effective remedy" requirement through three lenses: the extent to which the provisional remedy matches the final remedy sought, whether the trial court's order merely preserves the status quo pending its final decision, and the extent and nature of irreparable change or harm to the appealing party's position between provisional remedy and final judgment (i.e., the "unringing of the bell" concept). *Id.* at ¶ 17. In *Preterm-Cleveland,* we concluded that all three markers of

---

[1] The Supreme Court of Ohio recently agreed to hear an appeal of an appellate court's decision holding that a trial court's preliminary injunction blocking enforcement of a new city of Columbus firearm ordinance based on conflicts with R.C. 9.68 was not a final appealable order. *Doe v. City of Columbus,* 5th Dist. Delaware No. 23CAE040028, *appeal accepted,* 173 Ohio St.3d 1443, 2024-Ohio-1228, 230 N.E.3d 1207. Perhaps the Court will use that appeal as an opportunity to elaborate upon the meaning of a "meaningful or effective remedy" under R.C. 2505.02(B)(4).

finality pointed in the same direction, rendering the order not final under R.C. 2505.02(B)(4). *Id.* at ¶ 28.

{**¶17**} Here, by contrast, the relevant indicators of finality pull in different directions. Although the final remedy that the City seeks generally mirrors the provisional remedy granted, suggesting a lack of finality, the preliminary injunction ordered by the trial court reversed the established status of the statewide firearms uniformity law, as amended in 2018, that had prevailed in the state for nearly four years. With respect to the final consideration, this case does not involve any unringing of the bell problems, but (and this dovetails with the status quo inquiry), the state loses the ability to enforce a law that's been on the books for years.

{**¶18**} Extant case law in Ohio places significant weight on the status quo consideration, and it is on that point that the finality of the trial court's order hinges. "Ohio courts have held that 'a preliminary injunction which acts to maintain the status quo pending a ruling on the merits is not a final appealable order under R.C. 2505.02.' " *Hootman v. Zock*, 11th Dist. Ashtabula No. 2007-A-0063, 2007-Ohio-5619, ¶ 16, quoting *E. Cleveland Firefighters, IAFF Local 500 v. City of E. Cleveland*, 8th Dist. Cuyahoga No. 88273, 2007-Ohio-1447, ¶ 5. So how do we define that? Recently, we recognized that some Ohio appellate courts have described the "status quo" concept in some contexts as the " 'last, actual, peaceable, uncontested status which preceded the pending controversy.' " *Preterm-Cleveland* at ¶ 21, quoting *Taxiputinbay, LLC v. Village of Put-In-Bay*, 6th Dist. Ottawa No. OT-20-021, 2021-Ohio-191, ¶ 17.

{**¶19**} That definition of "status quo" made sense in *Preterm-Cleveland* and in the ordinary injunction case where the aggrieved party rushes to court and secures a

preliminary injunction shortly after litigation commences. But here, the trial court's order, from a pragmatic and common-sense perspective, cannot be construed as merely preserving the status quo as the case proceeds. And the contrast to *Preterm-Cleveland* highlights the point. In *Preterm-Cleveland*, the status quo was nearly five decades of legal abortion access secured by *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and its progeny. *Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, at ¶ 4, 23. A federal court had enjoined S.B. 23 since before its effective date, and the state law restricting abortion access remained enjoined other than a brief, two-month interlude between federal and state injunctions.

{¶20} Unlike the law enjoined in *Preterm-Cleveland*, Original R.C. 9.68 had been on the books since March 2007 and was blessed as constitutional by the Supreme Court in December 2010. *See City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 2, 35. The 2018 amendment to R.C. 9.68 took effect in December 2019 and was not enjoined by the trial court until September 2023, *three years and nine months* later. Although the City's litigation against the 2018 amendment began in June 2019, before it even took effect, the City voluntarily dismissed that lawsuit in January 2023 after unsuccessfully seeking an injunction for more than three years. Additionally, the City waited about four months after the stay in its initial case was lifted in September 2022 before it dismissed the suit and refiled it the following January, begging the question of whether it was actively contesting R.C. 9.68 during that time.

{¶21} We acknowledge that the City's lawsuit against the amendment was tied up in a procedural morass not of its making for much of that time, but at some point, the concept that an order does not modify the status quo because the underlying law

13

has been contested in some fashion from the start must yield to the reality that the amended law has been in effect for years. During that time, political subdivisions were bound by the law's newly expanded prohibitions on local firearms regulations not specifically provided for by federal or state law. Amended R.C. 9.68(A). Local governments authored laws seeking to conform to the newly amended state law, and citizens raised claims under the new right of action language in Amended R.C. 9.68(B). *See, e.g.*, *West v. City of Cincinnati*, 1st Dist. Hamilton No. C-230469, 2024-Ohio-1951. The amendments appear to have had substantial effects on not only the drafting of laws, but also by possibly chilling other laws that local governments might have pursued under Original R.C. 9.68 (as the City's testimony at the preliminary injunction hearing validates). Unscrambling the egg at this point creates numerous problems, all of which militates in favor of immediate appellate review.

{¶22} We can't imagine that there are many cases in Ohio where a *preliminary* injunction is issued several years deep into litigation. For that reason, we suspect this case is aberrational in terms of the appellate jurisdictional inquiry. Overall, as unsatisfied as we remain with the controlling legal standard, we are ultimately persuaded that we should not ignore the reality that the trial court's injunction reverses the status quo that had existed for years, cutting against the purpose of preliminary injunctions, which is "to preserve a status between the parties pending a trial on the merits." *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist. 2000). By enjoining an amended law that everyone had been living with for nearly four years, the trial court's order created uncertainty around the applicability of the statewide firearm uniformity law, particularly regarding the effects of the amendments themselves. On this unique record, we therefore conclude that the

state would be denied a meaningful or effective remedy without an immediate appeal of the preliminary injunction, rendering the trial court's order final and appealable under R.C. 2505.02(B)(4).

III.

{¶23} Turning to the merits, we must determine whether the trial court erred in preliminarily enjoining the enforcement of Amended R.C. 9.68. Generally, the party seeking a preliminary injunction must establish several elements by clear and convincing evidence: "(1) there is a substantial likelihood that she/he will prevail on the merits, (2) she/he will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction." *Castillo-Sang v. Christ Hosp. Cardiovascular Assoc., LLC*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, ¶ 16, citing *Stoneham* at 267-268. All four of these factors must be balanced, with no single factor being dispositive. *Id.*

{¶24} We review the trial court's decision to grant a preliminary injunction for an abuse of discretion. *Id.*, citing *Banker's Choice, LLC v. Zoning Bd. of Appeals of Cincinnati*, 2018-Ohio-3030, 106 N.E.3d 1271, ¶ 18 (1st Dist.). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. However, "we review legal determinations de novo, including the likelihood of success on the merits." *City of Columbus v. State*, 2023-Ohio-2858, 223 N.E.3d 540, ¶ 27 (10th Dist.). On legal questions particularly, we are guided by "the fundamental principle that a court must 'presume the constitutionality of lawfully enacted legislation.' " *City of Cleveland*

15

(2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 6, quoting *Arnold v. City of Cleveland*, 67 Ohio St.3d 35, 38, 616 N.E.2d 163 (1993).

{¶25} Our analysis begins with and centers on the first preliminary injunction consideration—whether the City was substantially likely to prevail on the merits, a question that we approach with fresh eyes. *See City of Columbus* at ¶ 27. We focus first on the Home Rule Amendment argument that proved dispositive below before turning to the City's alternative constitutional arguments against Amended R.C. 9.68. We then conclude with a brief assessment of the other three preliminary injunction factors.

A.

{¶26} In its primary argument against Amended R.C. 9.68, which convinced the trial court to issue the injunction below, the City posits that the law violates Ohio's Home Rule Amendment, which reserves for municipalities the "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Constitution, Article XVIII, Section 3. Courts have at times struggled to conform to a single methodology for interpreting the Home Rule Amendment, especially its prohibition on municipal regulations "not in conflict with general laws."

{¶27} "[T]he intention of the Home Rule Amendment was to eliminate statutory control over municipalities by the General Assembly." *Cincinnati Bell Tel. Co. v. City of Cincinnati*, 81 Ohio St.3d 599, 605, 693 N.E.2d 212 (1998), citing *Perrysburg v. Ridgway*, 108 Ohio St. 245, 140 N.E. 595 (1923); *see State ex rel. Bailey v. George*, 92 Ohio St. 344, 110 N.E. 951 (1915), paragraph one of the syllabus ("The plain purpose of the municipal home-rule amendment * * * is to provide home rule for

16

cities."). Prior to the enactment of the Home Rule Amendment in 1912, "municipalities derived any legislative powers they might have from enactments of the General Assembly." *Benjamin v. Columbus*, 167 Ohio St. 103, 109, 146 N.E.2d 854 (1957), citing *Bronson v. Oberlin*, 41 Ohio St. 476 (1885). The amendment altered that power dynamic, and now "[m]unicipalities derive their powers of self-government directly from the Constitution." *City of Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 7. In an early interpretation of how the amendment operated, the Supreme Court declared that a state statute that "provided for a complete prohibition upon municipal legislation * * *" "would not be effective to take away the power conferred upon municipalities by the plain provisions of the Constitution." *Youngstown v. Evans*, 121 Ohio St. 342, 346, 168 N.E. 844 (1929).

{¶28} Now, when a municipality challenges a state law on the grounds that it prohibits municipal regulation in derogation of the Home Rule Amendment, Ohio courts predominantly apply a three-part test: "A state statute takes precedence over a local ordinance," and does not run afoul of the Home Rule Amendment, "when '(1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute.' " *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 10, quoting *Mendenhall v. City of Akron*, 117 Ohio St.3d 33, 2008 Ohio 270, 881 N.E.2d 255, ¶ 17.

{¶29} Here, the City requested a declaratory judgment that Amended R.C. 9.68 facially conflicts with the City's police power. After concluding that the City had standing to bring this claim because of ongoing litigation and the threat of further legal action, the trial court agreed that a facial conflict existed. *See West*, 1st Dist. Hamilton

No. C-230469, 2024-Ohio-1951. On appeal, the state does not dispute the conclusion that Amended R.C. 9.68 purports to preempt local ordinances that conflict with it, assuming they constitute exercises of local police power, and it does not contest the City's standing to bring a facial challenge. For our purposes, then, the parties agree that the dispositive issue is whether Amended R.C. 9.68 constitutes a "general law," and we thus confine our analysis under the three-part test identified in *Mendenhall* to that single question. *See Mendenhall* at ¶ 17.

B.

{¶30} But how do we sort that out? Another test stands at the ready to be our guide, albeit with similar flaws in the lack of precision. The controlling test for determining whether a state law represents a "general law" for Home Rule Amendment purposes is set forth in *City of Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963. There, the Court held that for a state statute to be a "general law" for purposes of the Home Rule Amendment, it must:

> (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

*Id.* at ¶ 21.

{¶31} The trial court here held that Amended R.C. 9.68 met the first and second prongs of *City of Canton*, and we agree. Importantly, when the Supreme Court upheld Original R.C. 9.68 against a Home Rule Amendment challenge, it determined

that courts should not "analyz[e] R.C. 9.68 in a vacuum" and instead should consider it "in pari materia with other statutes regulating firearms." *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 17, 23. It thus determined that the law was "part of a comprehensive statewide legislative enactment," *id.*, based in part on its prior holding that " '[t]he General Assembly could not have been more direct in expressing its intent for statewide comprehensive handgun-possession laws' " through that statute. *Id.* at ¶ 16, quoting *Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, at ¶ 41.

{¶32} Nothing about the new amendments suggests that Amended R.C. 9.68 is less of a statewide comprehensive scheme than was Original R.C. 9.68 when the Court upheld it in 2010, and the parties do not contest the uniform application question under the second prong. Our only concern under the first prong is whether the 2022 amendment, which merely added knives to the statute, represents part of a statewide and comprehensive statutory scheme. However, the City does not argue for a separate analysis of the 2018 and 2022 amendments, and the trial court likewise offered no distinction between them in enjoining Amended R.C. 9.68. Therefore, we consider both amendments of Amended R.C. 9.68 together, and we thus see no infirmity under prongs one and two. Our focus then turns to prongs three and four of the *City of Canton* test.

i.

{¶33} As Supreme Court of Ohio case law reveals, courts have struggled to uniformly apply the third prong. In *City of Canton*, the Court reiterated its prior understanding that " 'the meaning of [the third prong] is that a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an

overriding statewide interest would directly contravene the constitutional grant of municipal power.' " *City of Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 32, quoting *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982). Applying that understanding in *City of Canton*, the Court held that even though the operative subsubsection of the state statute in question "appear[ed] to serve an overriding state interest in providing more affordable housing options across the state," an exception to the main regulation in a separate subsection "defeat[ed] [that] purpose." *Id.* at ¶ 31-33. Thus, the operative subsection did not set forth a regulation and merely limited municipal legislative power, failing to satisfy the third prong. *Id.*

{¶34} Later, the Court appeared to split on the continuing efficacy of assessing the third prong of *City of Canton* through the "overriding state interest" lens. In *City of Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, a three-justice plurality reaffirmed the "overriding state interest" analysis, ultimately concluding that three traffic-related state statutes (assessed separately) each were not "general laws" and thus violated municipalities' home rule authority under *City of Canton*'s third prong. *City of Dayton* at ¶ 20 (plurality opinion). Concurring in judgment only and relying exclusively on *City of Canton*'s fourth prong, two justices noted the concerns of the remaining justices, who dissented, that the plurality's third prong analysis "steers courts perilously close to legislative policy decisions." *See id.* at ¶ 40 (French, J., concurring in judgment only, joined by Kennedy, J.); *id.* at ¶ 47 (O'Neill, J., dissenting); *id.* at ¶ 52, 83-84 (DeWine, J., dissenting, joined by O'Neill, J.).

{¶35} In *City of Cleveland* (2010), however, the Court made no mention of an "overriding state interest" when applying *City of Canton*'s third prong. *See City of*

*Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 27-28. The Court simply "conclude[d] that R.C. 9.68 establishes police regulations rather than limiting municipal legislative power" after discarding the lower court's logic that this prong was not met because "some states have more [firearm] regulations than Ohio." *Id.* at ¶ 27-28. Even so, although not couched in the "overriding state interest" language, the Court held that "[Original] R.C. 9.68 addresses the General Assembly's concern that absent a uniform law throughout the state, law abiding gun owners would face a confusing patchwork of licensing requirements, possession restrictions, and criminal penalties as they travel from one jurisdiction to another." *Id.* at ¶ 35; *see Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, at ¶ 40 ("[Original R.C. 9.68(A)] represents an attempt by [the Ohio General Assembly] to nullify all municipal laws impeding uniform application of the state statute."). Therefore, to the extent the "overriding state interest" lens still factors into the third prong analysis, we determine the changes in Amended R.C. 9.68 merely serve to expand and clarify the state interest identified in *City of Cleveland* (2010) and to specify how adversely affected people and entities can enforce their rights under the statute. We thus need not further assess the continuing relevance of the "overriding state interest" concern because the Court's prior holding controls on that point.

{¶36} A separate methodological disparity concerns whether courts should parse a state statute challenged under the Home Rule Amendment sentence-by-sentence when applying the *City of Canton* general law test or consider it more holistically. Given the new content added by the amendments, that methodology could theoretically result in a different outcome than what the Court reached in *City of Cleveland* (2010) since the Court seemingly did not analyze Original R.C. 9.68 that

way in that case. Indeed, that method led to the trial court's conclusion below that the third and fourth sentences of Amended R.C. 9.68(A), and all of R.C. 9.68(B), failed on the third prong. The City again steers us to *City of Dayton* to support the trial court's approach.

**{¶37}** Notably, the plurality in *City of Dayton* applied a different *City of Cleveland* Home Rule Amendment case from 2014, determining that the Court "must not merely examine [the enacting legislation] as a whole but must analyze the contested provisions individually." *City of Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, at ¶ 20, citing *City of Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644 ("*City of Cleveland* (2014)"). In doing so, the *City of Dayton* plurality held unconstitutional three separate statutes (all enacted together under the same bill) because they individually failed to serve an overriding state interest. *Id.* at ¶ 22, 23, 27. But the Court in *City of Cleveland* (2014), by contrast, held that a *single sentence* of the single statute in question failed under the third prong of *City of Canton* because that sentence proscribed "*any* ordinance, rule, or resolution of a municipal corporation" relating to licensing and regulation of towing entities. (Emphasis added.) *City of Cleveland* (2014) at ¶ 15-17. The basis of its holding, then, was that the problematic sentence did not just nullify *conflicting* local regulations regarding towing entities, but *any* regulations on the matter. *Id.* at ¶ 6, 16 (holding that the unconstitutional sentence "purports to totally preempt local authority to regulate * * *, even through ordinances that do not conflict" with state law); *see* Ohio Constitution, Article XVIII, Section 3 (reserving municipal authority to "adopt and enforce" regulations "as are not in conflict with general laws").

**{¶38}** Ultimately, regardless of whether we assess Amended R.C. 9.68 as a whole or sentence-by-sentence, no single provision of that law purports to preempt and nullify *any and all* local regulation relating to firearms. Rather, the fourth sentence (new to the amended statute) merely declares null and void any "such" local regulations, referring to those that create restrictions on firearms in a way not "specifically provided by" state or federal law. Amended R.C 9.68(A). For example, the law preempts and nullifies an ordinance creating criminal liability under a child endangerment statute for the negligent storage of firearms because no such regulation appears in federal or state law, but it allows for an ordinance that prohibits having weapons under disability in a way that mirrors state law. *See West*, 1st Dist. Hamilton No. C-230469, 2024-Ohio-1951, at ¶ 36-37, 39-40. Furthermore, Amended R.C. 9.68 allows for local ordinances to include a firearm-related exemption from prosecution under a child endangerment statute based on behavior the municipality deems "safe storage." *Id.* at ¶ 38-39.[2]

**{¶39}** Importantly, then, the statute preempts only those local regulations that create restrictions beyond state or federal law, rather than occupying the field entirely regardless of existing state or federal law (which seemed to be the Court's concern in *City of Cleveland* (2014) leading to its sentence-by-sentence approach). *See Am. Fin. Servs. Assn. v. City of Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 31 ("A statement by the General Assembly of its intent to preempt a field of

---

[2] In *West*, we held that a single subsection of a Cincinnati ordinance conflicted with Amended R.C. 9.68 because it regulated firearms in a way not specifically provided for by state or federal law. *West* at ¶ 37. Two other subsections of that ordinance did not violate Amended R.C. 9.68 because one generally regulated child endangerment and did not relate to firearms and the other provided an exemption from prosecution for behaviors constituting "safe storage" of firearms (and thus did not impose a "further restriction" relating to firearms, as Amended R.C. 9.68 prohibits). *Id.* at ¶ 36, 38-39.

23

legislation is a statement of legislative intent and may be considered to determine whether a matter presents an issue of statewide concern, but does not trump the constitutional authority of municipalities to enact legislation pursuant to the Home Rule Amendment, provided that the local legislation is not in conflict with general laws."); *City of Cleveland* (2014) at ¶ 16-17. Furthermore, the fourth sentence of Amended R.C. 9.68 simply doubles-down on what the Court already held in *City of Cleveland* (2010)—that Original R.C. 9.68 " 'represent[ed] an attempt by [the General Assembly] to nullify all municipal laws impeding uniform application of the state statute' " and that it "displace[d] municipal firearm ordinances." *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 16, quoting *Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, at ¶ 40; *City of Cleveland* (2010) at ¶ 35. The new, fourth sentence of Amended R.C. 9.68(A) adds that the law "preempts, supersedes, and declares null and void" local regulations violating the prohibitions of the statute, fitting squarely within the Court's prior holdings.

{¶40} The third sentence of Amended R.C. 9.68(A), which substantially matches the second sentence of Original R.C. 9.68(A), likewise satisfies the third prong. It makes two additions to the original law: expansions to the types of firearm regulations with which a municipal ordinance cannot conflict, and a clause specifying that "further license, permission, restriction, delay, or process" (which was also included in Original R.C. 9.68) includes "any ordinance, rule, regulation, resolution, practice, or other action or any threat of citation, prosecution, or other legal process." Amended R.C. 9.68(A); *see* Original R.C. 9.68(A). Although the amended law's broad and imprecise prohibitions on "practice," "other action," and "threat of * * * legal process" concern us, the City raised a separate void for vagueness challenge in the trial

court that is not now before us on appeal. For the purposes of our Home Rule Amendment analysis, the additional language more specifically defining what the General Assembly meant by declaring that political subdivisions cannot impose a "further license, permission, restriction, delay, or process" regarding certain areas of firearm law does not undermine the Court's prior holding that Original R.C. 9.68 "establishe[d] police regulations rather than limiting municipal legislative power." *City of Cleveland* (2010), at ¶ 28.

**{¶41}** Finally, we are compelled to reject the trial court's holding under the third prong that "Amended R.C. 9.68 does nothing to regulate firearms" because, viewed in context with other firearm-related state statutes that it incorporates by reference, the law establishes police regulations by mandating statewide uniformity in those areas. We certainly appreciate the City's frustration with what they perceive to be the inadequacies of that regime, but that policy debate does not control the legal determination that we must make. In *City of Cleveland* (2010), the Court concluded that Original R.C. 9.68 satisfied the third prong of the *City of Canton* "general law" test because the law "establishe[d] police regulations rather than limiting municipal legislative power." *Id.* Even though the Court did not explicitly assess Original R.C. 9.68 under the third prong in the broader context of state law, it expressly endorsed that logic and methodology elsewhere in the opinion, including by relying on a prior case in which the Court did apply a broad view of the statutory scheme in question. *See id* at ¶ 22-24, 29; *see Am. Fin. Servs. Assn.* at ¶ 35 (holding that the statewide predatory lending law in question set forth a regulation and met the third prong after it viewed the statute "as part of a comprehensive regulatory plan"). Furthermore, Amended R.C. 9.68 merely added regulated categories to the scheme that already

existed under Original R.C. 9.68. Thus, Amended R.C. 9.68, like Original R.C. 9.68, sets forth police regulations by incorporating other state firearm laws.

{¶42} Therefore, in line with *City of Cleveland* (2010) and prevailing precedent, we conclude that Amended R.C. 9.68(A), assessed both as a whole and sentence-by-sentence, satisfies the third prong of *City of Canton*'s "general law" test for the purposes of our Home Rule Amendment analysis. Accordingly, the trial court's decision to strike Amended R.C. 9.68(B) because it merely provides for the private enforcement of Amended R.C. 9.68(A) likewise runs afoul of that precedent.

ii.

{¶43} Finally, on the fourth *City of Canton* prong, which relates to whether the state law "prescribe[s] a rule of conduct upon citizens generally," the trial court concluded that Amended R.C. 9.68 "by its terms can only act on municipalities" rather than citizens generally. Previously, the Court in *City of Cleveland* (2010) held that "[Original] R.C. 9.68 applies to all citizens generally." *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 29. Viewing the law "as part of Ohio's comprehensive collection of firearm laws," the Court determined that Original R.C. 9.68, "interpreted as part of a whole," met the fourth *City of Canton* prong. *Id.*

{¶44} The trial court based its holding on the fact the Amended R.C. 9.68(A) "declares null and void any such further license, permission, restriction, delay, or process" and that new language of Amended R.C. 9.68(B) identifies specific types of damages recoverable from those subdivisions. However, Original R.C. 9.68(A) afforded citizens the right to "own, possess, purchase, sell, transfer, transport, store, or keep any firearm" "without further license, permission, restriction, delay, or process" by political subdivisions. The new language of Amended R.C. 9.68(A)

declaring such local government actions "null and void" merely renders more explicit what was implicit under Original R.C. 9.68—that the law "applies to all citizens generally" and "displaces municipal firearm ordinances." *City of Cleveland* (2010) at ¶ 29, 35.

{¶45} Furthermore, Original R.C. 9.68(B) included an all-but-explicit right of action for any "person, group, or entity" and provided that the court "shall award costs and reasonable attorney fees" to those who prevail in their challenges to local regulations in conflict with Original R.C. 9.68(A). Amended R.C. 9.68(B) does the same, merely clarifying that such challengers can sue for damages to be paid by the political subdivision in addition to injunctive relief, declaratory relief, or a combination thereof. Amended R.C. 9.68(B). It also provides for recovery when the political subdivision repeals or rescinds the challenged regulation during the lawsuit, which has no effect on the general applicability of the subsection. *Id.* Further, both under Original R.C. 9.68 and Amended R.C. 9.68, challengers must prove standing to sue. *See, e.g.*, *Ohioans for Concealed Carry, Inc v. City of Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, 172 N.E.3d 935 (analyzing standing issues under Original R.C. 9.68); *West*, 1st Dist. Hamilton No. C-230469, 2024-Ohio-1951, at ¶ 40 (analyzing standing issues under Amended R.C. 9.68). Therefore, following *City of Cleveland* (2010), we see no reason why Amended R.C. 9.68 changes the conclusion that the law meets the fourth *City of Canton* prong.

{¶46} We acknowledge, however, the perspective of the concurrence in *City of Dayton*, which emphasized that the state statutes in question in that case were "phrased in terms of what a local authority shall or shall not do" and "appl[ied] not to citizens but to municipalities." *City of Dayton*, 151 Ohio St.3d 168, 2017-Ohio-6909,

27

87 N.E.3d 176, at ¶ 44 (French, J., concurring in judgment only). The concurrence therefore concluded that the fourth prong was not met because the statutes "merely limit[ed] municipal authority to enforce other substantive laws." *Id.* It also concluded that the fourth prong was not met simply because other provisions in the same chapter (R.C. 4511) described substantive traffic offenses. *Id.* at ¶ 45. That conclusion seemingly contradicts the Court's fourth prong holding in *City of Cleveland* (2010) in which the Court "consider[ed] the entire legislative scheme" regarding firearms. *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 29. If the concurrence's view prevailed, it might necessitate a different result here. However, we are bound by majority opinions of the Supreme Court, not concurring or dissenting ones.

{¶47} Ultimately, then, we conclude that under *City of Canton*, especially as applied in *City of Cleveland* (2010), Amended R.C. 9.68 is a "general law" for the purposes of the *Mendenhall* Home Rule Amendment analysis. Accordingly, at this preliminary stage in the proceedings, the City has not established by clear and convincing evidence that Amended R.C. 9.68 violates the Home Rule Amendment and that the state statute does not take precedence over any local firearm regulations that conflict with it. *See Mendenhall*, 117 Ohio St.3d 33, 2008 Ohio 270, 881 N.E.2d 255, at ¶ 17.

C.

{¶48} As alternative grounds to support the trial court's preliminary injunction, the City reiterates two additional constitutional arguments that the court rejected below. It first challenges Amended R.C. 9.68 as a violation of the free speech rights it ascribes to both the city as a municipal corporation and to Mayor Pureval and

Vice-Mayor Kearney under Article I, Section 11 of the Ohio Constitution. The City also raises a separation of powers claim resembling one argued and rejected in litigation over Original R.C. 9.68.

{¶49} Before addressing those arguments, we first determine that the City did not waive them by raising them in its appellee brief rather than by bringing a cross-appeal. App.R. 3(C)(2) provides that "[a] person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-assignment of error." This court has explained that "App.R. 3(C)(2) allows an appellee to support the trial court's judgment on grounds the trial court rejected." *Cincinnati Gas & Elec. Co. v. Joseph Chevrolet Co.*, 153 Ohio App.3d 95, 2003-Ohio-1367, 791 N.E.2d 1016, ¶ 12 (1st Dist.). Because the City merely seeks to offer alternative grounds upon which the trial court could have enjoined Amended R.C. 9.68, rather than changing the judgment imposing a preliminary injunction, the City is not seeking to "change the order" and thus need not bring a cross-appeal to properly raise its alternative constitutional arguments, which were also raised and preserved below. App.R. 3(C)(2).

i.

{¶50} In its first free speech claim, the City contends that Amended R.C. 9.68 impedes the city's ability to speak as a municipal entity through legislation, including resolutions that may include pure political speech, in violation of Article I, Section 11 of the Ohio Constitution. That section protects the speech rights of "citizens" to "freely speak, write, and publish [their] sentiments on all subjects." Ohio Constitution, Article I, Section 11. The City primarily relies on federal case law regarding the First

29

Amendment to claim that municipalities enjoy free speech rights under the Ohio Constitution. But the U.S. Supreme Court has declined to answer this question under the First Amendment, *see United States v. Am. Library Assn.*, 539 U.S. 194, 211, 123 S.Ct. 2297, 156 L.Ed.2d 221 (2003), and the City on appeal identifies no federal authority holding that municipalities have free speech rights (although the City invites us to extend the speech rights recognized in *Citizens United v. FEC*, 558 U.S. 310, 342, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) from private corporations to municipal corporations).

{¶51} Likewise, the City has not marshalled sufficient support for municipal free speech rights under Ohio law. It cites one intermediate appellate case in which a divided court did not definitively decide the question. *Garono v. State*, 7th Dist. Mahoning No. 85 C.A. 44, 1987 Ohio App. LEXIS 6312, 6 (Mar. 27, 1987), *rev'd in part on other grounds*, 37 Ohio St.3d 171, 524 N.E.2d. 496 (1988). Furthermore, recent Supreme Court of Ohio precedent generally cuts against the extension of certain rights to municipalities under the Ohio Constitution. *See Village of Newburgh Hts. v. State*, 168 Ohio St.3d 513, 2022-Ohio-1642, 200 N.E.3d 189, ¶ 27 ("A municipal corporation acts in the capacity of the government in exercising the police power, not as 'person' guaranteed constitutional protections from government."); *City of Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 25-31 (holding that a municipal corporation, unlike a private corporation, does not qualify as a "victim" for purposes of Article I, Section 10a of the Ohio Constitution because a government entity, unlike a private corporate entity, could not be fairly described as a "person"). In any event, we need not resolve this interesting question at this stage, particularly without more complete briefing from both sides. At this preliminary stage of the

proceedings, we merely determine that the City has not clearly and convincingly established a likelihood of success on the merits of this free speech claim.

{¶52} The City's other free speech claim, which relates to the mayor and vice-mayor's speech, is resolved by examining the text of Amended R.C. 9.68. Despite the City's contention that the law punishes city officials' gun-related speech, even outside the official legislative process, Amended R.C. 9.68(B)'s private right of action only extends to those "adversely affected by any manner of ordinance, rule, regulation, resolution, practice, or other action enacted or enforced by a political subdivision in conflict with division (A)[.]" Amended R.C. 9.68(B). City officials' commentary and advocacy around gun regulation does not amount to an "action enacted or enforced by a political subdivision," and thus is not impeded by the law. *Id.* Furthermore, when a municipality does regulate in conflict with Amended R.C. 9.68, the law provides for recovery only from the political subdivision itself, not from individual city officials. *Id.* Therefore, Mayor Pureval and Vice-Mayor Kearney remain free to speak on firearm-related issues without the threat of legal action under Amended R.C. 9.68, and their free speech rights under the Ohio Constitution, the bounds of which we do not need to determine, are not threatened by the law.

ii.

{¶53} Finally, we reject the City's separation of powers arguments against Amended R.C. 9.68 based on the text of the amended law and on precedent. Amended R.C. 9.68(A) does not purport to expand the meaning of constitutional provisions relating to firearms; rather, it articulates the General Assembly's purpose for enacting the statute and identifies specific areas in which political subdivisions may not regulate in conflict with state or federal law. In doing so, the legislature did not usurp

31

the judiciary's responsibility to define the constitutional rights associated with firearms nor did it limit the fact-finder's role in determining when a conflict exists between local and state or federal law.

**{¶54}** Furthermore, the Supreme Court of Ohio has already determined that Original R.C. 9.68(B) did not violate separation of powers principles in awarding reasonable attorney fees and costs to prevailing parties, and nothing about Amended R.C. 9.68(B) casts doubt on that holding. *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 34. Amended R.C. 9.68 remains one of "many statutes that provide for the award of attorney fees and costs to parties who prevail in certain types of cases, as a means to deter certain conduct." *Id.* at ¶ 32. The General Assembly's addition of Amended R.C. 9.68(B)(2), providing for fees and reasonable expenses to the plaintiff when the political subdivision repeals or rescinds the conflicting regulation during the litigation, simply prevents defendants from skirting fee liability under Amended R.C. 9.68(B) by changing course in the face of a plaintiff's challenge. Although this subsection is new to Amended R.C. 9.68, we previously endorsed this theory of recovery under Original R.C. 9.68(B). *See Kellard v. City of Cincinnati*, 2021-Ohio-1420, 171 N.E.3d 868, ¶ 22-25 (1st Dist.) (holding that attorney fees and costs could have been awarded under Original R.C. 9.68(B) if the plaintiff could show that their lawsuit caused the city to change its policies in response). In line with this holding and the fact that Ohio courts " 'defer to the General Assembly on the matter of statutory authorization of recovery of attorney fees as part of the costs of litigation,' " *City of Cleveland* (2010) at ¶ 33, quoting *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St.2d 177, 180, 347 N.E.2d 527

(1976), we hold that Amended R.C. 9.68 does not violate the separation of powers doctrine.

**{¶55}** Therefore, the City has not established a likelihood of success that Amended R.C. 9.68 violates the Home Rule Amendment, the free speech provision of the Ohio Constitution (as it relates to the city as a municipal corporation, Mayor Pureval, and Vice-Mayor Kearney), or the separation of powers doctrine. Accordingly, the City was not substantially likely to prevail on the merits of its claim, and that factor weighs strongly against the issuance of a preliminary injunction.

IV.

**{¶56}** The state's appeal here primarily rises and falls on the first preliminary injunction factor, regarding the City's likelihood of success on the merits, which we conclude weighs strongly against the issuance of an injunction. But because the decision to issue a preliminary injunction depends on a balancing of the four relevant factors, we briefly consider the three remaining injunction factors. *See Castillo-Sang*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, at ¶ 16.

**{¶57}** First, we assess the trial court's conclusion that the City faced irreparable injury absent an injunction because Amended R.C. 9.68 violates the Home Rule Amendment and because the City's laws thus face potential nullification. "An irreparable injury is 'a harm for which no plain, adequate, or complete remedy at law exists.'" *Gigsmart, Inc. v. Axlehire, Inc.*, 2023-Ohio-3807, 226 N.E.3d 1073, ¶ 66 (1st Dist.), quoting *Brookville Equip. Corp. v. City of Cincinnati*, 1st Dist. Hamilton No. C-120434, 2012-Ohio-3648, ¶ 23. The trial court's conclusion here largely depended on the City's likelihood of success on the merits, a question on which we draw a different conclusion. The City presents no alternative theory of harm on appeal, so we conclude

that it has not proven an irreparable injury by clear and convincing evidence. *See City of Columbus*, 2023-Ohio-2858, 223 N.E.3d 540, at ¶ 49 ("[W]e do not find the evidence in the record before us clearly and convincingly established the City would suffer imminent and irreparable injury in 2022 if the trial court did not temporarily enjoin the State from enforcing a statute that had, at that point, been in effect for almost four years."). To be clear, though, a party's irreparable harm argument will not always rise and fall with the likelihood of success factor, and this second factor generally calls for independent analysis. *See Stoneham*, 140 Ohio App.3d at 274, 747 N.E.2d 268 ("A threat of harm is a sufficient basis on which to grant injunctive relief."). But here, based on the way the trial court considered these factors and the arguments the City advanced, they appear opposite sides of the same coin.

{¶58} Second, the trial court concluded that no third parties faced any concrete harm if the injunction was granted and added that, conversely, city residents, taxpayers, and those who "rely on the City's authority to protect public safety and welfare" faced likely harm absent an injunction. However, this factor concerns the risk of harm to third parties if the injunction was *granted*, in which case the City's citizens would be cleared of such risks. *See Gigsmart, Inc.* at ¶ 68 ("The third factor to be considered is whether any third parties will be unjustifiably harmed if the injunction is granted."). The state observes that those Ohioans whose firearm-related rights have been bolstered by Amended R.C. 9.68 for nearly four years face a risk of harm if that regime is suddenly enjoined. Although we decline to wade too far into whether and how much an injunction would chip away at anyone's legal protections, we conclude that this factor weighs more in the state's favor than the trial court suggested, especially given our conclusion that the amended law remains likely constitutional.

34

{¶59} The final factor concerns whether the public interest would be served by an injunction. Here we agree with the trial court that the extensive ways Amended R.C. 9.68 binds the City's hands on firearm regulation threatens to harm the public's interest in its collective safety and wellbeing. The City developed a significant record in the trial court regarding the effects of gun violence on the citizens of Cincinnati and the dominance of the issue in local politics and governance. It further identified several ways that Amended R.C. 9.68 constrains the City's ability to effectively respond to localized gun violence concerns with government action.

{¶60} Although the final factor weighs in the City's favor, in the end, our conclusion that Amended R.C. 9.68 does not violate the Ohio Constitution under any theory advanced by the City at this stage minimizes the risks of harm to the City, third parties, and the public from denying an injunction of that law. On balance, as we consider the four preliminary injunction factors, they weigh in the state's favor, and we thus conclude that the trial court abused its discretion in granting the City's request for a preliminary injunction of Amended R.C. 9.68. We therefore sustain the state's sole assignment of error.

\*   \*   \*

{¶61} Amended R.C. 9.68 survives this constitutional challenge primarily because the Supreme Court of Ohio largely foreclosed the City's arguments against it in its decision upholding Original R.C. 9.68 against substantially similar claims. *City of Cleveland* (2010), 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, at ¶ 35. To the extent the 2018 and 2022 amendments to the law may have altered its preemptive effects and expanded the liability of political subdivisions that act in conflict with it, the City has not proven by clear and convincing evidence that those amendments

35

change the constitutional calculus forged by *City of Cleveland* (2010). We therefore sustain the state's sole assignment of error and reverse the trial court's judgment preliminarily enjoining Amended R.C. 9.68. We remand this matter to the trial court for further proceedings.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** concurs in judgment only.
**CROUSE, J.**, dissents.

**CROUSE, J.,** dissenting.

**{¶62}** I do not believe that we have jurisdiction to decide the merits of this appeal because the preliminary injunction order is not a final and appealable order. Therefore, I respectfully dissent.

**{¶63}** This court only has jurisdiction to review final and appealable orders. Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2505.03. "For an order to be final and appealable, it must meet the requirements of R.C. 2505.02(B)." *Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, at ¶ 10, quoting *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 5. As recognized by the majority, the parties agree that the order appealed in this case—an order granting a preliminary injunction—falls under the purview of R.C. 2505.02(B)(4), and that the first part of the test set forth in R.C. 2505.02(B)(4)(a) has been satisfied. The parties dispute, however, whether the requirement in R.C. 2505.02(B)(4)(b) has been met. A determination as to whether the trial court's order was final and appealable accordingly hinges on whether the state would be afforded a meaningful or effective remedy by an appeal following final judgment. *See* R.C. 2505.02(B)(4)(b). I would

36

answer this question in the positive, and it is on this point that I disagree with the majority.

**{¶64}** "Ohio courts generally hold that the second prong of R.C. 2505.02(B)(4) cannot be met when the provisional remedy is a preliminary injunction and the ultimate relief sought in the lawsuit is a permanent injunction." *Preterm-Cleveland* at ¶ 18, quoting *Clean Energy Future, LLC v. Clean Energy Future-Lordstown, LLC*, 11th Dist. Trumbull No. 2017-T-0110, 2017-Ohio-9350, ¶ 7. In such situations, "an appeal after issuance of the permanent injunction will provide the meaningful and effective remedy." *Id.* at ¶ 19. There is also a potential that the party seeking to immediately appeal a preliminary injunction will prevail with respect to the issuance of a permanent injunction "and secure effective relief through that manner." *Id.*

**{¶65}** In this case, although the trial court issued a preliminary injunction enjoining amended R.C. 9.68, the city has also sought relief in the form of a permanent injunction enjoining R.C. 9.68 in both its original and amended forms, as well as a declaration that R.C. 9.68 is unconstitutional. The arguments that the city proffered in support of the motion for a preliminary injunction—violations of the Home-Rule Amendment, separation-of-powers doctrine, and the right to free speech—are the same arguments set forth in the complaint in support of the request for a permanent injunction. These facts support a determination that the state would be afforded a meaningful or effective remedy by an appeal following final judgment. *See Preterm-Cleveland* at ¶ 20 ("Because the provisional remedy is a preliminary injunction and plaintiffs ultimately seek a permanent injunction to enjoin the same act on the same

reasoning, it supports the conclusion that the second prong of R.C. 2505.02(B)(4) is not met in this case.").

{¶66} In addition to recognizing the impact of a party's request for a permanent injunction on a determination as to whether an order granting a preliminary injunction is final and appealable, *Preterm-Cleveland* explained how that determination is also impacted by whether the trial court's order maintains or changes the status quo. *Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, at ¶ 21. We recognized in *Preterm-Cleveland* that "[c]ourts have found that 'a preliminary injunction which acts to maintain the status quo pending a ruling on the merits is not a final appealable order under R.C. 2505.02.' " *Id*. at ¶ 21, quoting *Quinlivan v. H.E.A.T. Total Facility Solutions, Inc.*, 6th Dist. Lucas No. L-10-1058, 2010-Ohio-1603, ¶ 5. In the context of cases where a permanent injunction has also been requested, "if the status quo is being preserved, the aggrieved party will have an opportunity to obtain its 'meaningful or effective remedy' if a permanent injunction is issued." *Id*. at ¶ 22.

{¶67} The status quo has been defined as "the 'last, actual, peaceable, uncontested status which preceded the pending controversy.' " *Id*. at ¶ 21, quoting *Taxiputinbay*, 6th Dist. Ottawa No. OT-20-021, 2021-Ohio-191, at ¶ 17. "Ohio law confirms that the 'status quo' is that which precedes the enforcement of a challenged law." *Id*. at ¶ 23. As such, "[a]n order maintaining the status quo returns the parties to their last legally uncontested status." *Medpace, Inc. v. Icon Clinical Research, LLC*, 1st Dist. Hamilton No. C-230133, 2023-Ohio-4552, ¶ 29.

{¶68} Several key dates and actions must be considered to determine the parties' last legally uncontested status and whether the trial court's order maintained

the status quo. R.C. 9.68, in its original form, first took effect on March 14, 2007. That version of the statute remained in effect until the General Assembly amended it in H.B. 228. The 2018 amendments were effective as of December 28, 2019. R.C. 9.68 was again amended via S.B. 156, effective as of September 13, 2022.

{¶69} The underlying complaint in this case was filed on January 27, 2023. At that time, the 2018 amendments had been in effect for approximately three years and enforcement of amended R.C. 9.68 was the status quo. However, the city contends that the date that the instant lawsuit was filed does not represent the parties' "last legally uncontested status." *See Medpace* at ¶ 29. Rather, the city argues that it first filed a lawsuit challenging amended R.C. 9.68 on June 6, 2019, in the case numbered A-1902786. At the time that the lawsuit in the case numbered A-1902786 was filed, enforcement of R.C. 9.68 in its original form was the status quo; the first amendment to R.C. 9.68 had been passed in H.B. 228, but had yet to take effect. The city dismissed the case numbered A-1902786 on January 25, 2023, and filed the lawsuit in the case at bar two days later.

{¶70} The record in the case numbered A-1902786 is not part of the record in the case at bar. However, the trial court, in its order issuing the preliminary injunction, discussed the lawsuit, stating that the city "filed the first iteration of this lawsuit in June of 2019, six months before First Amended R.C. 9.68 took effect." And this court can take judicial notice of the case numbered A-1902786. "[An Appellate court] can take judicial notice of court filings which are readily accessible from the internet." *Abbott v. Ford Dev. Corp.*, 2015-Ohio-5233, 54 N.E.3d 745, ¶ 8 (1st Dist.), fn. 1, quoting *Morello v. Ferrucio*, 5th Dist. Stark No. 2014CA00139, 2015-Ohio-1370, ¶ 9; *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d

39

516, ¶ 8 and 10. Allowing this court to take judicial notice of documents outside the record when determining our own jurisdiction is consistent with the body of law allowing "[a] court of appeals [to] look outside the record to determine whether an appeal is moot." *In re C.L.W.*, 12th Dist. Clermont No. CA2021-05-013, 2022-Ohio-1273, ¶ 29, fn. 1, citing *State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228, 729 N.E.2d 1181 (2000).

**{¶71}** The complaint in the case numbered A-1902786 was similar to the complaint in the case at bar. It raised home-rule and separation-of-powers challenges to the amendments to R.C. 9.68 set forth in H.B. 228, contended that the punitive provisions in H.B. 228 were void for vagueness, and sought to enjoin the state from enforcing the bill. Through no fault of the city, the litigation in the case was greatly delayed. The case was consolidated with a complaint for declaratory and injunctive relief filed against the city by relator Thomas E. Brinkman, Jr., alleging that the city did not have authority to commence the legal action in the case numbered A-1902786 and seeking an injunction to stop the city from proceeding with that lawsuit.

**{¶72}** Competing motions for summary judgment were filed by the city and the state on the city's complaint challenging the constitutionality of H.B. 228, as well as by the city and relator Brinkman on the relator's separate complaint. The trial court granted summary judgment to relator Brinkman and enjoined the city from proceeding in the lawsuit against the state. The city appealed, and on March 30, 2022, this court reversed the trial court's judgment in *City of Cincinnati v. State of Ohio*, 1st Dist. Hamilton Nos. C-210343 and C-210353, 2022-Ohio-1019. Shortly after the case was returned to the trial court, it was stayed while relator Brinkman appealed this court's opinion. The stay was lifted in September of 2022 after the Ohio Supreme

Court declined to hear the appeal. No further action was taken in the case until the city dismissed its lawsuit on January 25, 2023, only to file the action in the case at bar two days later. The city represents that the earlier lawsuit was dismissed and the current action initiated because the General Assembly had enacted the amendments to R.C. 9.68 set forth in S.B. 156 in the intervening timeframe.

{¶73} The "last, actual, peaceable, uncontested status" preceding the city's challenge to R.C. 9.68 was in June of 2019, prior to the city filing the lawsuit in the case numbered A-1902786. *See Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, at ¶ 21, quoting *Taxiputinbay*, 6th Dist. Ottawa No. OT-20-021, 2021-Ohio-191, at ¶ 17. At that time, enforcement of R.C. 9.68 in its original form was the status quo. And because the trial court's order granting the preliminary injunction returned the legal landscape to enforcement of the original version of R.C. 9.68, the order did not alter the status quo. The trial court's order had the effect of returning the parties to their last legally uncontested status. *See Medpace*, 1st Dist. Hamilton No. C-230133, 2023-Ohio-4552, at ¶ 29.

{¶74} The city has been attempting to challenge amended R.C. 9.68 for approximately five years. As set forth above, it first filed a lawsuit seeking to enjoin the amendments to R.C. 9.68 in June of 2019, six months before the amendments took effect. That lawsuit was delayed when a separate lawsuit was filed to enjoin the city from proceeding with its challenge. Although the city had moved for summary judgment on its claims for declaratory and injunctive relief, the trial court instead granted summary judgment on the consolidated complaint and enjoined the city from continuing with its R.C. 9.68 lawsuit. Approximately a year and a half passed while the

trial court's decision was appealed. Despite the city's efforts to challenge them, the amendments to R.C. 9.68 took effect during this litigation.

**{¶75}** Given the city's longstanding and continued efforts to challenge amended R.C. 9.68, we must look to the legal landscape at the time that its challenge was first initiated to determine whether the trial court's order granting a preliminary injunction altered the status quo. A failure to do so would allow the status quo to be manipulated by the intervening litigation filed by relator Brinkman. *See, e.g., Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 269 F.3d 1149, 1155 (10th Cir.2001) (rejecting defendant's attempt to define the status quo as the four-day period preceding the filing of a motion for injunctive relief because to do so "would imply that any party opposing a preliminary injunction could create a new status quo immediately preceding the litigation merely by changing its conduct toward the adverse party").

**{¶76}** The majority opinion evaluates the impact of the trial court's order from a "pragmatic and common-sense perspective" to conclude that the order alters the status quo because the amendments to R.C. 9.68 were in effect for over three years before they were enjoined. I agree that the majority's argument sets forth the practical reality that the amendments to R.C. 9.68 took effect during the course of this litigation. But in determining whether an order altered the status quo, I believe the better approach is to apply the definition of status quo set forth in our case law and determine whether the parties' status after the issuance of the preliminary injunction is the same as the last legally uncontested status which preceded the pending controversy. *See Preterm-Cleveland*, 1st Dist. Hamilton No. C-220504, 2022-Ohio-4540, at ¶ 21.

**{¶77}** To eschew the definition of status quo that this court has applied in recent cases in favor of the majority opinion's approach of deciding that the "unique record" in this case allows jurisdiction, creates inconsistency and unpredictability for litigants and allows the status quo to be manipulated by the conduct of a party.

**{¶78}** While the possibility of permanent injunctive relief and the impact of the trial court's order on the status quo are relevant and guiding considerations, we are ultimately required to determine whether the state will be afforded a meaningful and effective remedy upon appeal after final judgment. The Tenth District's decision in *City of Columbus v. State*, 10th Dist. Franklin No. 22AP-676, 2023-Ohio-195, is instructive on this issue. In that case, the city of Columbus filed a complaint seeking a declaration that R.C. 9.68 and the amendments to the statute set forth in H.B. 228 were unconstitutional. The complaint also sought preliminary and permanent injunctions against both R.C. 9.68 and H.B. 228. *Id.* at ¶ 1. The trial court granted a preliminary injunction enjoining the state from enforcing R.C. 9.68 in both its original and amended forms. *Id.* The state appealed the trial court's order.

**{¶79}** The Tenth District considered whether the trial court's order granting the preliminary injunction was a final, appealable order pursuant to R.C. 2505.02(B)(4). *Id.* at ¶ 8. While the court noted that the city was also seeking a permanent injunction, *id.* at ¶ 12, it additionally held that the trial court's order altered the parties' status quo, stating:

> As previously discussed, R.C. 9.68 was first enacted in 2006 and became effective March 14, 2007. The City filed its complaint in the present matter on March 19, 2019, several months before the amendments to R.C. 9.68 wrought by HB 228 became effective on December 28, 2019.

43

However, R.C. 9.68 as originally enacted in 2006 had already been in effect for over twelve years and had been held to not violate the home rule provisions of the Ohio Constitution for over eight years before the City filed its complaint. By enjoining not only the portions of HB 228 amending R.C. 9.68, but the entire statute, the trial court's preliminary injunction undoubtedly altered the status quo.

*Id.* at ¶ 15. The court ultimately concluded that the state would be denied a meaningful or effective remedy absent an immediate appeal. *Id.* at 18.

**{¶80}** One dispositive factor distinguishes *Columbus* from the case at bar—in that case, the trial court enjoined not only the amendments to R.C. 9.68, but the entire statute. Following the trial court's order, the state was no longer able to enforce R.C. 9.68 in any form, and it is indisputable that the status quo was altered.

**{¶81}** In contrast, following the trial court's order in this case, the state is able to enforce R.C. 9.68 in its original form. The amendments to the statute set forth in H.B. 228 and S.B. 156 did not greatly alter the statute. The amendments expanded the types of fees recoverable and the circumstances providing for such recovery, as well as added knives to the category of protected weapons. Absent enforcement of those provisions, the state is still able to enforce R.C. 9.68's prohibition against municipal ordinances that conflict with the statutory right to keep and bear arms.

**{¶82}** The majority opinion states that during the three years of litigation before Amended R.C. 9.68 was enjoined, municipalities were bound by and authored their laws to comply with the amended statute. It notes that citizens raised claims under the new right of action language in Amended R.C. 9.68. It thus claims that

44

"unscrambling the egg at this point creates numerous problems, all of which militates in favor of immediate appellate review." *See* ¶ 21 of majority opinion.

**{¶83}** But there really is not much to unscramble. The majority claims that Amended R.C. 9.68 "merely serve[s] to expand and clarify the state interest identified in *City of Cleveland* (2010) and to specify how adversely affected people and entities can enforce their rights under the statute." *See* ¶ 35 of majority opinion. It further claims that Amended R.C. 9.68(B) "Merely clarif[ies] that [citizen] challengers can sue for damages to be paid by the political subdivision in addition to injunctive relief, declaratory relief, or a combination thereof." *See* ¶ 44 of majority opinion. Thus, if Amended R.C. 9.68 merely clarifies the existing statute, municipalities and citizens have not been relying on anything majorly different in Amended R.C. 9.68. They had very similar requirements, rights, and claims under Original R.C. 9.68.

**{¶84}** Because the city has also sought a permanent injunction, and because the trial court's order did not alter the status quo, the state will be afforded a meaningful or effective remedy by an appeal following final judgment. *See* R.C. 2505.02(B)(4). At that point, the state will either have already been accorded relief by the trial court's denial of a permanent injunction, or it will be able to challenge any granted injunctive relief. And the state will have been able to enforce R.C. 9.68 in its original form as it awaits final judgment.

**{¶85}** I would accordingly hold that the trial court's order granting a preliminary injunction is not a final appealable order because it did not meet the requirements of R.C. 2505.02(B)(4). Because I believe that we do not have jurisdiction over this case and that we should not reach the merits of the appeal, I respectfully dissent.

Please note:

The court has recorded its entry on the date of the release of this opinion.