[Cite as *State v. Bates*, 2024-Ohio-5831.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240104 |
| | | TRIAL NO. B-2202287 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N* |
| DERRELL BATES, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 13, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Elizabeth Miller,* Ohio Public Defender, and *Lauren Hammersmith*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} A tragic drive-by shooting that resulted in a teenager's death ultimately led to murder and felonious assault charges for another teenager—defendant-appellant Derrell Bates. After the juvenile court found probable cause that he and his co-defendants committed the killing, the State initiated bindover proceedings to have Mr. Bates' case transferred to the court of common pleas. Applying the statutory framework established by R.C. 2152.12, the juvenile court sifted through the evidence before ultimately concluding that Mr. Bates was not amenable to rehabilitation in the juvenile court system. The juvenile court accordingly granted the State's motion and relinquished jurisdiction to the court of common pleas. After a conviction via a guilty plea, Mr. Bates now appeals, challenging the juvenile court's amenability determination. Based on our abuse of discretion standard of review, however, we do not see a basis in the record for disturbing the trial court's decision. We accordingly affirm its judgment.

I.

{¶2} In 2021, as police investigated potential illicit activities at a gas station in the middle of the night, they happened upon 14-year-old Derrell Bates and attempted to pat him down. He resisted these efforts, but officers nevertheless located a firearm and proceeded to attempt to arrest him. At that point, Mr. Bates fled as officers gave chase before ultimately tasing him in order to subdue him. Officers then discovered a second handgun as they arrested him. These antics led to a series of juvenile charges against Mr. Bates for offenses that would be carrying a concealed weapon, resisting arrest, and the like, if committed by an adult.

{¶3} The authorities later realized that Mr. Bates was a suspect in a recent drive-by shooting of 16-year-old G.B. a month earlier perpetrated by a group of young

men riding in a stolen blue Nissan. The group targeted the boy and unleashed a barrage of over 20 bullets at him. Evidence implicating Mr. Bates in this murder included shell casings, the handguns recovered (connecting him to the shells used in the shooting), and five videos that had been uploaded to social media depicting individuals (including Mr. Bates) brandishing firearms as they rode in the stolen Nissan shortly before the murder occurred. Based on this and other evidence, the State charged Mr. Bates with offenses that would be murder and felonious assault if committed by an adult, and the juvenile court found that probable cause existed.

{¶4} In light of the severity of the crimes and his age, the State initiated bindover proceedings to transfer Mr. Bates' case to the common pleas court in order to try him as an adult. Under the controlling standard in R.C. 2152.12, this required the court to evaluate his amenability to rehabilitation within the juvenile system. Consistent with R.C. 2152.12(C), the court ordered an investigation into Mr. Bates' social, educational, and familial histories, in connection with assessing his amenability to juvenile rehabilitation. Dr. Nicole Leisgang conducted this psychological examination and produced a report detailing her findings, which included an opinion that Mr. Bates was amenable to rehabilitation in the juvenile system.

{¶5} The juvenile court convened a hearing and considered the report, the evidence tendered, and each parties' arguments, after which it agreed to transfer jurisdiction to the adult court. The court held that nearly all of the factors in R.C. 2152.12(D) favored transfer, whereas none of the factors in R.C. 2152.12(E), weighing against transfer, applied.

{¶6} After the common pleas court denied a motion to remand jurisdiction back to the juvenile court, Mr. Bates eventually entered into a guilty plea agreement with the State, pleading guilty to involuntary manslaughter, R.C. 2903.04(A),

3

felonious assault, R.C. 2903.11(A)(1), receiving stolen property, R.C. 2913.51(A), and carrying concealed weapons, R.C. 2923.12(A)(2) (in exchange for dismissal of the murder charge). Pursuant to this agreement, the court found him guilty and sentenced him to 18-to-19-and-one-half-years in prison.

{¶7} In the aftermath of that conviction and sentence, Mr. Bates timely appeals the juvenile court's amenability determination, presenting a single assignment of error.

## II.

{¶8} In his sole assignment of error, Mr. Bates contends that the juvenile court abused its discretion when it transferred his case for adult prosecution in contravention of R.C. 2152.12(B). We review a juvenile court's amenability determination and balancing of the various factors under an abuse of discretion standard. *State v. Nicholas*, 2022-Ohio-4276, ¶ 22. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. We first explain the governing legal standard before turning to an application to the facts at hand.

## A.

{¶9} In *Nicholas*, the Supreme Court of Ohio recently provided an overview of the statutory framework for juvenile transfer motions, and ultimately clarified the burden of proof question. Ohio's juvenile system permits two types of jurisdictional transfer, mandatory and discretionary. *Nicholas* at ¶ 3. Mandatory transfer removes discretion from judges and requires the transfer of juveniles to adult court in certain limited circumstances. *Id.*; R.C. 2152.12(A). Conversely, discretionary transfer, at issue in this case, provides juvenile court judges with the discretion to transfer certain

juveniles to adult court who do not appear to be amenable to care or rehabilitation within the juvenile system. *Id.*; R.C. 2152.12(B).

{¶10} The statute creates a three-pronged inquiry for the juvenile court to undertake in evaluating a discretionary transfer: "the juvenile court may transfer the child to adult court for prosecution if it finds (1) that the child was at least 14 years old at the time of the charged act, (2) that there is probable cause to believe that the child committed the charged act, and (3) that '[t]he child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.'" (Citations omitted.) *Id.* at ¶ 4; R.C. 2152.12(B)(1) through (3). Prior to its decision, pursuant to R.C. 2152.12(C), "the juvenile court must order 'an investigation into the child's social history, education, family situation, and any other factor bearing on'" the child's amenability to juvenile rehabilitation, including a psychological examination. *Id.*

{¶11} As the court decides whether to exercise its discretion to transfer to adult court, it must balance the statutory factors weighing in favor of transfer under R.C. 2152.12(D), against those opposing transfer delineated in R.C. 2152.12(E). *Nicholas,* 2022-Ohio-4276, at ¶ 5. These factors "generally address personal characteristics of the juvenile, [his] history in the juvenile-court system, and the circumstances of and the harm caused by the acts charged." *Id.* The court must indicate, on the record, the specific factors it weighed in making its amenability determination. *Id.* The State bears the ultimate burden: "To find that a juvenile is not amenable to treatment in the juvenile system, the court need only conclude that the factors that favor transfer outweigh the factors that counsel against transfer." *Id.* at ¶ 29. As the Supreme Court has clarified, "[by] requiring only a simple outweighing, [the statute] by its terms establishes a preponderance-of-the-evidence standard for

deciding a juvenile's amenability." *Id.*

**{¶12}** With that standard in mind, we turn to a consideration of the facts in this case.

B.

**{¶13}** Of the three statutory criteria, only the final one—regarding amenability to care or rehabilitation—is disputed before us now. R.C. 2152.12(B)(3). Mr. Bates was 14 years old at the time of the charged acts and the juvenile court found probable that he committed the offenses charged, which satisfies the first two inquiries. R.C. 2152.12(B)(1) and (2). We accordingly turn to that amenability consideration.

**{¶14}** The juvenile court, surveying the evidence, identified eight different factors that militated in favor of transfer under R.C. 2152.12(D) including: (1) the victim suffered physical harm, (2) Mr. Bates allegedly committed the act as part of a gang or organized criminal activity,[1] (3) he had a firearm during the commission of the act charged, (4) at the time of the act charged, he was under a community control sanction, (5) the results of any previous juvenile sanctions and programs demonstrate that rehabilitation will not occur in the juvenile system, (6) he is emotionally and mentally mature enough for transfer, (7) there is not sufficient time to rehabilitate him within the juvenile system, and (8) he was uncooperative and resisted arrest against a backdrop of chronic behavioral incidents at school. Most of these factors are not disputed by Mr. Bates on appeal, with the exception of the ones we elaborate upon below. On the other side of the ledger, the juvenile court found that none of the factors under R.C. 2152.12(E) weighed against transfer.

---

[1] Mr. Bates raises an evidentiary objection to the consideration of any gang-related evidence. We view any concern with the caliber of this evidence as, at most, harmless error for the reasons explained in this opinion.

**{¶15}** Mr. Bates, on appeal, insists that the trial court got it wrong largely because it disagreed with the assessment of the court-appointed expert, Dr. Leisgang, and because he would've had nearly six years of time for rehabilitation in the juvenile court system. We will unpack both of these arguments.

**{¶16}** In her psychological examination, Dr. Leisgang opined that Mr. Bates was amenable to rehabilitation within the juvenile system. Mr. Bates acknowledges, as he must, that Dr. Leisgang's opinion is not binding on the court. *See State v. White*, 2008-Ohio-1623, ¶ 71; *see also State v. McBride*, 205 N.E.3d 663, 676 (1st Dist. 2023), citing *White* at ¶ 71 (holding that a juvenile court is not required to automatically accept an expert opinion, but the court may not arbitrarily disregard it and must provide an objective reason for doing so). But he is quick to point out that her expert analysis should've compelled more careful consideration from the court. We will explore a few facets of Dr. Leisgang's analysis.

**{¶17}** First, Mr. Bates points out that she opined that he suffered from a mental illness, which should have qualified as a factor pointing against transfer under R.C. 2152.12(E)(7) ("The child has a mental illness or intellectual disability."). But that's not how we read Dr. Leisgang's report. She opines that he has "emotional difficulty" that seems to impede his judgment, and elaborated that he had ADHD, "conduct disorder," "disruptive mood" disorder, and "unspecified anxiety disorder." She does not opine that his emotional challenges rise to the level of a mental illness. To be fair, the statute does not elaborate on what "mental illness" means, although the State points us to definitions elsewhere in the Revised Code that might illuminate the matter. *See, e.g.,* R.C. 5101.60(N); 5119.01(A)(14); 5122.01(A). But we need not decide today the precise answer to that question because we do not have an expert opining that a "mental illness" actually exists. The juvenile court recognized that some of his

7

conditions, such as ADHD, were readily treatable by medications—medications that he declined to take. Therefore, on this record, we are not convinced that the trial court should've weighed the "mental illness" factor in Mr. Bates' favor.

**{¶18}** Second, Mr. Bates' subsidiary argument essentially integrates the ultimate conclusion from Dr. Leisgang's opinion—that he was amenable to rehabilitation in the juvenile system—with the length of time stretching before him at the time of the bindover hearing. He maintains that, given nearly six years of time, the programming available in the juvenile system, and Dr. Leisgang's conclusion that he could benefit and become rehabilitated in this environment, the trial court incorrectly skewed the amenability calculus. To be sure, these are powerful points that suggest that Mr. Bates might benefit from rehabilitative efforts in the juvenile system. At the same time, however, Dr. Leisgang's opinion is not unqualified—she appreciates that he presents a "high risk" of future aberrant behavior, he understood the wrongfulness of his actions, and he had never tried consistent treatment to address his emotional and interpersonal difficulties (in other words, there's no assurance that it would work).

**{¶19}** We don't see any indication that the trial court improperly discarded Dr. Leisgang's opinion. Rather, it considered those findings (and the time remaining for treatment) against the broader picture. While Mr. Bates had successfully completed a probation period in the past, the court walked through an extensive record that he had accumulated (and the escalating nature of it), along with chronic problems of disturbances and threats in school. He was on community control at the time of the offense, resisted arrest, and sought to flee the officers. And the severity of the crime, and death of the victim (R.C. 2152.12(D)(1)) clearly weighed on the court. To be sure, almost six years presents an unusually long time to seek rehabilitation in the juvenile

system. But, as the facts in this case demonstrate, the matter is far from clear-cut. The trial judge weighed the multiple permissible considerations at issue here and filtered them through the statutory analysis to arrive at its conclusion.

**{¶20}** The court pointed out that Dr. Leisgang found him to be age appropriate, which factored into its conclusion that he had the maturity necessary to transfer to adult court. R.C. 2152.12(D)(8). Mr. Bates resists this conclusion, insisting that the record was devoid of such evidence. The evidence, while admittedly thin on this point, offers some support for the trial court's conclusion. The trial court emphasized that he associated with older teenagers and seemed to have the maturity to commit increasingly serious crimes. Admittedly, we have concerns regarding the court's conclusion here, but even if we agreed with Mr. Bates, it would not change the ultimate outcome. We consider any potential error here harmless in light of the factors identified and relied upon by the trial court.

**{¶21}** It is important to appreciate the discretion of the juvenile court here, inherent in the very label of "discretionary transfer." The court must keep its focus on "whether the juvenile system can help the juvenile," *Nicholas*, 2022-Ohio-4276, at ¶ 39, and juvenile courts should strive to do so, because that is part of the rationale for why we have a juvenile justice system to begin with. The juvenile court had various options at its disposal, including the prospect of utilizing the "Serious Youth Offender" designation on Mr. Bates. *See generally* R.C. 2152.11 through 2152.19; *but see Nicholas* at ¶ 38 ("A juvenile court therefore need not consider the availability of a serious-youthful-offender disposition as a factor in an amenability determination."). Had the court reached different factual conclusions and balanced the factors differently here, it is doubtful that we could have disturbed that conclusion on discretionary review. This is certainly a tragic case and one that different judges might

9

assess differently. But on abuse of discretion review, and considering the findings made on the record, we simply are unable to overturn the trial court's determination.

**{¶22}** Finally, Mr. Bates raises a policy-based argument that urges the court to consider the broader problem of the ubiquity of firearms in our society. In other words, in a country awash with guns (and in a State that seemingly wants to make it easier to own and carry guns, *see City of Cincinnati v. State*, 2024-Ohio-2425 (1st Dist.)), a juvenile should not be held to an adult standard because of his ease of procuring a firearm. He believes that his possession of guns in this case improperly tainted the juvenile court's conclusions. This is an interesting issue, and there would be much to say in a normative debate of this point. But we don't see any improper tipping of the scales by the trial court here, and Mr. Bates surely can't escape the reality that he used a firearm in a drive-by shooting to kill a teenager.

\* \* \*

**{¶23}** Because we cannot hold, based on the arguments and record before us that the juvenile court abused its discretion, we affirm its judgment and overrule Mr. Bates' assignment of error.

Judgment affirmed.

**ZAYAS, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.