[Cite as *State v. Mascus*, 2025-Ohio-240.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240089 |
| | | TRIAL NO. | B-2304123 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| JESSE MASCUS, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: January 29, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Elizabeth R. Miller*, Ohio Public Defender, and *Victoria Ferry*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   Defendant-appellant Jesse Mascus appeals from the judgment of the Hamilton County Court of Common Pleas convicting him, after a guilty plea, of murder in violation of R.C. 2903.01(A).  Mascus pushed his way into his girlfriend's apartment, walked into a darkened bedroom, and fired his gun 12 times.  T.S., a 17-year-old asleep in the room, was hit multiple times and later died from his injuries but not before having both of his legs amputated in an effort to save his life.  Mascus was 15 years old when he committed this offense.  Raising two assignments of error related to the transfer of his case from juvenile court to adult court, Mascus contends that his trial counsel was ineffective and the juvenile court abused its discretion in determining that he was not amenable to rehabilitation in the juvenile court system.  We are unpersuaded, and affirm the trial court's judgment.

## I.    Factual and Procedural History

{¶2}   In the early morning hours of February 18, 2023, Mascus and his friend took an Uber to his on-again/off-again girlfriend's apartment. His friend later told police that Mascus had asked him if he wanted to hang out and "chill with some females," and his friend agreed, but then, during the car ride to the apartment, Mascus started acting "hot shit crazy."  Once they arrived, Mascus, knowing the code to the apartment building, entered the building and knocked on the apartment door. When his girlfriend started to open the door, Mascus, brandishing a gun, shoved open the door, pushed his girlfriend out of the way, walked back to one of the darkened bedrooms, and, without turning on the lights, fired 12 shots into the room, and then fled.  T.S., a 17-year-old friend of the family had been sleeping in that room and was shot nine times:  twice in the groin, once in each thigh, once in the chest, twice in the back, once in his right arm, and once in the face, near his mouth.  Despite these

numerous wounds, T.S. lived for two more weeks. During that time, in an attempt to save him, doctors amputated T.S.'s left leg at the hip and his right leg at the knee. An infant boy was also sleeping in the bedroom and a bullet grazed his upper thigh and injured his testicle.

**{¶3}** Mascus's girlfriend identified him as the shooter. His girlfriend told police that Mascus had believed that she had "another guy" over at her apartment that night. She said he had threatened to come over earlier in the evening and "shoot the place up" but she did not take his comment seriously because he had threatened her in the past but had not followed through.

**{¶4}** At the time of these offenses, Mascus had been "AWOL" from Hillcrest Academy, a residential treatment facility for delinquent juveniles, after he had cut off his electronic monitoring unit and escaped in October 2022. He had been staying at various friends' homes since then.

**{¶5}** A few days after the shooting, police apprehended Mascus in the parking lot of a casino and discovered that he had a gun on him; however, it was not the gun used to shoot T.S. and the baby.

**{¶6}** A delinquency complaint was filed in juvenile court with various charges including aggravated murder, murder, felonious assault, aggravated burglary, carrying a concealed weapon, and escape. The State moved for a discretionary transfer of the case to adult court. Following the first hearing on the State's motion, the juvenile court found that there was probable cause that Mascus was the person who had committed these offenses. The court then ordered Mascus to undergo an evaluation by a court-appointed psychologist, Dr. Nicole Leisgang, to determine if he was amenable to rehabilitation in the juvenile court system.

**{¶7}** At the amenability hearing, Dr. Leisgang's report was admitted into

evidence. The report indicates that Mascus has had significant contact with the juvenile court system for the past three years including prior delinquencies and associated struggles with consistently following court-ordered sanctions as well as a long history of disruptive behavior in the school setting despite intervention efforts. Ultimately, Dr. Leisgang opined that Mascus was not amenable to rehabilitation in the juvenile court system, noting the presence of high risk factors associated with future delinquent and violent behavior including, "[a] history of [exposure to] violence, history of nonviolent offending, early initiation of violence, past intervention/supervision failures, caregiver criminality, poor school achievement . . . peer delinquency . . . anger management problems [and] low interest/commitment to school."

{¶8} At the hearing, Mascus's trial counsel noted that defense counsel often seek a second evaluation and opinion of their juvenile client's amenability, but explained why he chose not to do so here: he believed that a second evaluation requested by the defense was not confidential (unlike the court-ordered evaluation) and in his personal experience, when representing former clients, the prosecution would use statements made by a juvenile defendant during the second evaluation against the juvenile defendant in adult court. He then argued that Mascus was only 16 years old, which left five years to rehabilitate him within the juvenile court system, and that the court should take the opportunity to do so because this was Mascus's first violent offense. He also explained that Mascus had escaped from Hillcrest Academy because he did not feel safe there after being attacked several times.

{¶9} After considering Dr. Leisgang's report and the arguments of counsel, the juvenile court found that Mascus was not amenable to rehabilitation and transferred jurisdiction of the case to the common pleas court. There, Mascus entered

4

a guilty plea to one count of murder in exchange for dismissing the other charges and was sentenced to 15 years to life in prison. He now appeals.

## II. Assignments of Error

{¶10} In his first assignment of error, Mascus argues that he was deprived of his right to the effective assistance of counsel. In order to demonstrate ineffective assistance of counsel, Mascus must prove (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that his counsel's deficient performance prejudiced him resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other, and is fatal to an ineffective-assistance claim. *Strickland* at 697; *State v. Madrigal*, 2000-Ohio-448, ¶ 10.

{¶11} Mascus argues that his trial counsel was ineffective for failing to make a reasonable investigation into mitigation evidence by failing to ask the court to have defense's own expert appointed to evaluate Mascus for amenability and failing to have a witness testify about the available programs that would benefit Mascus. After reviewing the record, we hold that regardless of whether trial counsel's performance was deficient (and we are not saying that it was), Mascus cannot demonstrate resulting prejudice. There is no evidence in the record that a second evaluation would have resulted in a recommendation different from Dr. Leisgang's or revealed some factor that would weigh more heavily in support of amenability. There is also no evidence in the record to demonstrate whether the programs available through the juvenile court system would have most likely benefitted Mascus and resulted in his rehabilitation. While we can appreciate appellate counsel's argument that trial counsel failed to present any substantial evidence of Mascus's amenability, we have to keep in mind

that there is nothing in this record to demonstrate the extent or content of trial counsel's investigation. There is no way to tell if trial counsel undertook a reasonable investigation and simply did not find anything to use to support Mascus's amenability or whether trial counsel failed to undertake a reasonable investigation and would have found evidence to support Mascus's amenability. Accordingly, because Mascus cannot demonstrate prejudice on this record, his ineffective-assistance-of-counsel claim fails. The first assignment of error is overruled.

**{¶12}** In his second assignment of error, Mascus contends that the juvenile court violated R.C. 2152.12(B) and abused its discretion by transferring jurisdiction of Mascus's case to the adult court. We are unpersuaded.

**{¶13}** Ohio law permits juvenile courts to transfer certain juveniles to adult court to face criminal sanctions. There are two types of transfers under Ohio's juvenile scheme: mandatory and discretionary. *State v. Nicholas*, 2022-Ohio-4276, ¶ 3. This case involves a discretionary transfer. A juvenile court has discretion to transfer, or bind over, to an adult court a juvenile offender alleged to have committed an act that would be a felony if committed by an adult if it finds that (1) the juvenile was at least 14 years of age at the time of the charged act; (2) probable cause exists to believe that the juvenile committed the charged act; and (3) the juvenile does not appear to be amenable to care or rehabilitation within the juvenile system, and who appears to be a threat to public safety. *Id.* at ¶ 4; *see* R.C. 2152.12(B)(1)-(3). If the court finds probable cause exists, as it did here, it must continue the proceeding, order an investigation into the child's history, "including a mental examination of the child by a public or private agency or a person qualified to make the examination." *Id.*, citing R.C. 2152.12(C).

**{¶14}** Under this assignment, Mascus only challenges the juvenile court's

amenability determination, which we review for an abuse of discretion. *Id.* at ¶ 22; *State v. Bates*, 2024-Ohio-5831, ¶ 8 (1st Dist.).

**{¶15}** In reaching its amenability determination, the juvenile court is required to consider certain statutory factors and decide whether the factors in favor of transfer outweigh the factors indicating that the case should remain in juvenile court. *See* R.C. 2152.12(B)(3). R.C. 2152.12(D) lists the factors in favor of transferring jurisdiction, while R.C. 2152.12(E) lists the factors in favor of retaining jurisdiction. In addition to the enumerated factors listed in those statutes, the juvenile court is instructed to consider "any other relevant factors." R.C. 2152.12(D) and (E). The juvenile court must ensure that the record of its determination "indicate[s] the specific factors that were applicable and that the court weighed." R.C. 2952.12(B)(3).

**{¶16}** Here, the juvenile court found that six out of the nine statutory factors in favor of transferring jurisdiction to the adult court applied, including the fact that the two victims suffered physical harm, Mascus used a firearm to commit the acts, and that at the time of the charged acts he was under a court sanction but that that sanction had been unsuccessful as he had engaged in fighting at the residential facility and cut off his electronic monitoring unit and escaped. *See* R.C. 2952.12(D)(1) and (5)-(7). Additionally, the court, relying on Dr. Leisgang's evaluation and recommendation, found that Mascus was sufficiently mature to understand the consequences of his decisions and that there was insufficient time to rehabilitate, given Mascus's significant contact with the juvenile court system and the pattern of his delinquent behavior escalating, despite school and court interventions, from carrying a gun, stealing, and receiving stolen property to using the gun to murder. *See* R.C. 2952.12(D)(8) and (9).

**{¶17}** The court also determined that none of the factors against transfer were

applicable where neither victim provoked Mascus, Mascus was the principal actor, he had previous adjudications, he had caused serious physical harm to the victims, and he did not suffer from a mental illness. *See* R.C. 2952.12(E)(1)-(5) and (7). Further, the court again noted that Dr. Leisgang's evaluation of Mascus indicated that he was sufficiently mature for the transfer and there was insufficient time to rehabilitate Mascus. *See* R.C. 2952.12(E)(6) and (8).

**{¶18}** Mascus first argues that the juvenile court failed to appropriately assess his age and attendant adolescent characteristics when determining that he was not amenable to rehabilitation in the juvenile system. But a review of the court's analysis belies that assertion. The juvenile court relied on Dr. Leisgang's report to determine Mascus's amenability. And Dr. Leisgang noted in her report that the tests she used to help evaluate Mascus's amenability to rehabilitation take into account a juvenile's unique characteristics and consider that the juvenile's risk of future violent behavior may vary throughout the adolescent period.

**{¶19}** Next, Mascus challenges the court's finding in support of transferring jurisdiction that he was sufficiently mature. Specifically, he contends that the court erred in its analysis when it failed to consider the role racist stereotypes play in perceptions of maturity and cites to several scholarly articles to support his argument. But this issue and the evidence pertaining to it was not presented to the juvenile court or introduced as evidence during the amenability hearing. Because this issue was not argued below and the evidence to support Mascus's argument is not included in the record before us, we may not consider it on appeal. *State v. Paegler*, 1996-Ohio-73.

**{¶20}** Finally, Mascus argues that the court failed to appropriately assess his history and why a term of commitment in the Department of Youth Services would not have been successful. Under this argument, Mascus seems to focus on the fact he had

8

five years left in the juvenile system and there were programs for him to participate in that would serve to rehabilitate him. While there are differing options at the juvenile court's disposal after a juvenile is adjudicated delinquent, that was not the issue before the juvenile court. Here, the court was tasked with considering and balancing the statutory factors for and against transferring jurisdiction to the adult court. To make that determination, the juvenile court followed the statutory procedure and ordered an evaluation into Mascus's complete history. The court then relied on that evaluation by Dr. Leisgang, which took into account the time remaining to rehabilitate Mascus, as to whether he would be amenable to rehabilitation within that time. Dr. Leisgang indicated in the report that as of April 2022, Mascus had spent more than 250 days detained in the "Youth Center." During that detainment, there were "multiple behavioral incidents including threatening, [provoking] major disruptions, and fighting." Despite this time at the Youth Center and other prior juvenile-court-referred services, Mascus was unsuccessful at rehabilitation. Dr. Leisgang's evaluation noted that this pattern comports with Mascus's pattern of continued difficult behavior at school despite intervention.

{¶21} On this record, we cannot say that the juvenile court exercised its discretion in an unwarranted way when considering and balancing the statutory factors it was required to consider in determining whether Mascus was amenable to rehabilitation in the juvenile court system. The court considered Mascus's complete history, and the factors found to be applicable in the court's decision are supported in the record before us. Accordingly, the second assignment of error is overruled.

### III.    Conclusion

{¶22} Having overruled both assignments of error, the judgment of the trial court is affirmed.

9

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.